UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

            Plaintiff,

vs.                                                     Case No. 21-CR-217

MANUEL THOMAS.

            Defendants.

---

### DEFENDANT MANUEL THOMAS SENTENCING MEMORANDUM

---

Defendant Manuel Thomas ("Thomas") has plead guilty to one count of Distributing a Controlled Substances Without a Legitimate Medical Purpose contrary to 21 U.S.C. §§841(a)(1), 841(b)(1)(c) and 846 and one count of Maintaining a Drug - involved Premises for the Purpose of Distributing Controlled Substances Outside of a Professional Medical Practice in violation of 21 U.S.C. §856(a)(1). Thomas admits the conduct that forms the basis for the above offenses. He notes, however, that several mitigating factors are relevant to this Court's consideration of the nature and circumstances of this offense.

As described below, there are substantial underlying facts that mitigate against significant culpability on the part of Thomas. In addition, his background and current family situation weighs heavily against a punitive sentence. Furthermore, the life changing collateral consequences already imposed upon Thomas insure against any

future misconduct and negate the need for any sentence that would remove Thomas from the community.

## SENTENCING CONSIDERATIONS

In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that the Sentencing Guidelines are advisory, not mandatory. *Booker* reinstated the District Court judge's considerable discretion to craft a reasonable sentence, applying the factors set forth in 18 U.S.C. § 3553(a) to individualize the sentence to the particular offender. *See Rita v. United States*, 551 U.S. 338 (2007); *United States v. Wallace*, 458 F.3d 606, 609-10 (7th Cir. 2006).

**1.     18 U.S.C. sec. 3553(a) Factors and Their Application**

Section 3553(a) states what a sentencing judge should consider:

(a)     Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --

    (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)     the need for the sentence imposed –

        (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)     to afford adequate deterrence to criminal conduct;

        (C)     to protect the public from further crimes of the defendant; and

        (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

    (3)     the kinds of sentences available;

    (4)     the kinds of sentence and the sentencing range established for the applicable category of offense by the applicable category of defendant as set forth in the guidelines . . . ;

    (5)     any pertinent policy statement issued by the Sentencing Commission:

    (6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

A sentence is reasonable if the sentencing court gives meaningful consideration to the sentencing factors enumerated in section 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is reasonable in light of the statutory factors and the individual circumstances of the defendant. *See United States v. Wachowiak,* 496 F.3d 744, 749-51 (7th Cir. 2007). A sentencing judge is not required, or permitted, to presume that a sentence within the Guidelines range is the correct sentence, or the presumptive sentence. The *Wachowiak* court stated, in analyzing *Rita*, while the "applicable guideline nudges [the sentencing judge] toward the sentencing range . . . his freedom to impose a reasonable sentence outside the range is ***unfettered***." 496 F.3d at 749. (emphasis added).

## BACKGROUND AND OFFENSE CIRCUMSTANCES

Prior to his involvement in the conduct resulting in these charges, Thomas had a respected and successful medical career. After graduating from medical school in the Dominican Republic, Thomas relocated to New York where he completed residency and became board-certified in pediatrics. Thereafter he moved to Milwaukee to continue his medical career.

In Milwaukee he secured full time employment as a pediatrician with Southeastern Pediatrics in Milwaukee (Southeastern). Southeastern was a rapidly growing pediatrics practice with multiple offices in southeastern Wisconsin. Dedicated to providing health care to underserved children in the community, Southeastern expanded and developed an excellent reputation for providing quality healthcare to

children in need. Thomas worked at Southeastern from 2005 until 2013. During that time, he developed a good reputation as a quality pediatrician and regularly received referrals from other physicians in the community. Thomas earned approximately $160,000 per year as a salaried physician at Southeastern. Unfortunately, the owner of Southeastern, Noemi Prieto MD, became embroiled in an investigation and prosecution of her fraudulent billing practices. As a result of complications arising out of that investigation, Thomas decided to leave Southeastern in 2013.

In 2013, Thomas opened Viva Advance Healthcare, a clinic on the south side of Milwaukee. He opened Viva to provide much needed behavioral and family healthcare to an under-served, primarily Medicaid eligible patient population. Viva was never intended to be a financially successful practice. Serving Medicaid and uninsured patients (often free of charge), meant his earnings were generally 4-5 thousand dollars per month.

It was during this period Thomas accepted as patients several individuals who he later learned where heavily involved in drug trafficking. These individuals, who have all now been arrested, interviewed, and prosecuted by the government were heavily involved in the use and distribution of heroin, methadone, and other narcotics. When Thomas balked at providing them additional medication, they explicitly threatened him and his family with harm and went as far as travelling to his then home in Brookfield where his family was present. From there, things spiraled downward. These individuals demanded Thomas issue scripts to other patients which they then filled and sold in order to produce income and support their own drug habits. Fearful

4

for the safety of his family, Thomas complied with their demands primarily during the period of 2016 to 2019.

## FAMILY CIRCUMSTANCES

Thomas resides in a Brookfield townhome complex with his estranged wife and autistic son Manuel. Since the suspension of his medical license in the Fall of 2020, Thomas has been the primary care provider for his son. His daughter, Eva Thomas, is an honor student at the University of Chicago. She has put her studies on hold due to her concerns about her father's sentencing. His son Manuel has profound deficits due to his autism and other issues requiring psychiatric and psychological care. He does not drive and cannot cook as he has an unnatural fear of any hot surfaces. He communicates very little and has no friends outside the family. Particularly problematic is the fact that his son leaves the home late at night and tends to wander around the townhome complex. Thomas has been notified by property management that his son has been sighted wandering about the complex late at night for no known reason. He has never demonstrated any capability of living on his own or managing his day-to-day life.

Though estranged and periodically separated, Thomas and his wife, Doris Veras, have maintained an amicable relationship. Straining that relationship was the foreclosure and loss of their Brookfield home in 2020. In addition, Ms. Veras is the sole owner of their current townhome and is responsible for all necessary living expenses. Ms. Veras is employed as a teacher's aide at Banting Elementary School in Waukesha. She is paid hourly and earns approximately $1,400 every two weeks. As the Viva Clinic

was never financially successful, Thomas' savings were quickly depleted when in the period of a year, they were evicted from the family home and Thomas lost the ability to practice medicine. The greatest fear of the Thomas/Veras family is that young Manuel will dangerously deteriorate if his primary support contact, his father, is removed from his life.

## HEALTH

Thomas has not had health insurance for several years. He has chronic respiratory issues which were complicated by long COVID symptoms for much of 2021. He has sleep apnea and uses a CPAP machine at night to regulate his breathing. He has chronic spinal disc disease which is currently not treated due to his lack of health insurance. In recent years, his only treatment is self-administered or received gratis from other physicians.

## COOPERATION

In addition to his voluntary plea agreement and acceptance of responsibility for his conduct, Thomas submitted to a lengthy interview with multiple prosecutors and government agents. He has cooperated fully with Pretrial Services and the investigation resulting in the presentence report.

## COLLATERAL CONSEQUENCES

Thomas voluntarily surrendered his DEA registration. He has consented to indefinite suspensions of his medical license in both Wisconsin and Illinois. It is unlikely that he will ever practice medicine again the United States. Given his financial situation it is unlikely that Thomas will ever be in a position to meet the financial

6

Case 2:21-cr-00217-LA    Filed 10/26/22    Page 6 of 8    Document 21

requirements necessary to petition for reinstatement of his license.

It is not just the ability to act as a licensed physician that has been stripped away because of this conviction. Under the mandatory exclusion provisions of the Social Security Act, Thomas will be excluded from any employment that receives any funds from federal health care programs. §1128(a)(4) of the Social Security Act mandates a minimum 5-year exclusion for any felony conviction relating to controlled substances. The effect of an Office of Inspector General (OIG) exclusion from federal healthcare programs is that no payment may be made for any items or services furnished by an excluded individual or entity under the Act. Any item or service furnished by an excluded individual or entity are not reimbursable under federal healthcare programs.

Essentially, an OIG exclusion prohibits association or employment with virtually all healthcare providers in any capacity. Excluded individuals are entered into a national database which is routinely accessed by all healthcare provider entities. Employment of an excluded individual is expressly prohibited if the employer receives any reimbursement from a federal healthcare program. Given the circumstances, it is a virtual certainty that Thomas will never return to the practice of healthcare in the United States.

## RECOMMENDATION

Manuel Thomas is a broken man on many levels. His career is gone, likely forever. His health is poor and his near future employment prospects are dim. His marriage hangs by a thread, and he is presently unable to support his family. At present, his focus is on the daily care of his son.

Thomas has accepted that his career in healthcare in the US is over. He realizes he needs to improve his health in order to seek a new profession. Loss of home, career and health has left him, at age 49, a broken man who needs to rebuild every part of his life. Incarceration of him will serve no societal purpose. Removal of Thomas from the community will inflict considerable harm upon his special needs son. It is respectfully recommended that the Court consider a sentence of probation supervision as a sentence. He is no risk to reoffend. He understands that decisions he made led to the destruction of his life. He accepts responsibility and has already paid a very heavy price for his sins. His individual circumstances are so severe that supervision in the community is reasonable and warranted.

Dated this 26th day of October 2022

Respectfully submitted,

GIMBEL, REILLY, GUERIN & BROWN LLP

By: /s/ Patrick J. Knight
    PATRICK J. KNIGHT
    State Bar No. 1003374
    pknight@grgblaw.com
    KRISTEN N. NELSON
    State Bar No. 1090088
    knelson@grgblaw.com
Attorneys for Defendant Manuel Thomas

POST OFFICE ADDRESS:
330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440